## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **KISKIDEE, LLC d/b/a HIBISCUS BEACH RESORT and H2O RESTAURANT (a/k/a HIBISCUS HOTEL and H2O RESTAURANT),**<br><br>Plaintiffs,<br>v.<br><br>**CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY NO. NB043060b, unincorporated foreign association of individuals,**<br><br>Defendant. | Civil Action No. 2009-077 |

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
**Harold B. Klite Truppman, Esq.,**
Miami, Fla.
    *For the Plaintiffs*

**Douglas L. Capdeville, Esq.,**
St. Croix, U.S.V.I.
**Sharmane Davis-Brathwaite, Esq.,**
St. Thomas, U.S.V.I.
**Matthew L. Litsky, Esq.,**
Tampa, Fla.
**Paige C. Jones, Esq.,**
Houston, Texas
    *For the Defendant*

## MEMORANDUM OPINION

**Lewis, District Judge**

    THIS MATTER is before the Court on Defendant's Motion to Dismiss Count IV of Plaintiffs' Second Amended Complaint, which alleges fraud. Because Plaintiffs have failed to

plead the requisite elements of fraud with sufficient particularity, Defendant's Motion to Dismiss will be granted, without prejudice.

### I. BACKGROUND

This action for breach of contract, bad faith, punitive damages and fraud arises out of an insurance claim filed by Plaintiffs, Kiskidee, LLC and H2O Restaurant (hereinafter "Plaintiffs") with Defendant, Certain Interested Underwriters at Lloyd's of London, (hereinafter "Underwriters" or "Defendant"). At all times relevant to this action, Defendant was engaged in the business of selling insurance policies in the United States Virgin Islands, and Plaintiffs owned real property located at 31 La Grande Princesse, St. Croix, U.S. Virgin Islands. *See* Second Amended Complaint at ¶¶ 5-6. Plaintiffs operated a hotel and restaurant from this property known as the Hibiscus Beach Resort and the H20 Restaurant. *Id*.

In August 2008, Plaintiffs purchased a hurricane/windstorm insurance policy from Defendant that covered, *inter alia*, business losses and damages to Plaintiffs' real and personal property. *Id.* at ¶ 7. The policy's effective period was from August 15, 2008 to August 15, 2009. *Id*. On October 15 and 16, 2008, the island of St. Croix was struck by Hurricane Omar, a category three hurricane. As a result, Plaintiffs lost business and suffered property damage. *Id*. at ¶ 8.

Plaintiffs reported their losses and filed a claim with Defendant under the insurance policy. *Id*. at ¶ 10. Defendant acknowledged the claim, selected an adjuster to appraise the claim and offered payment under the policy. *Id*. at ¶¶ 11, 16, 59. Plaintiffs' position was that the payment offered was inadequate. *Id*. at ¶¶ 132-133. Plaintiffs selected an appraiser, sought re-appraisal and demanded arbitration pursuant to the policy's provisions. *Id*. at ¶¶ 24-26, 93. Defendant did not respond to Plaintiffs' demand for arbitration and, on October 15, 2009, Plaintiffs filed the instant lawsuit. *Id*. at ¶¶ 93, 134.

On May 11, 2011, Plaintiffs filed their Second Amended Complaint alleging breach of contract, bad faith, punitive damages and fraud. (Dkt. No. 75).[1] Therein, they waived their right to arbitrate.  *See* Second Amended Complaint at ¶ 134.  On May 12, 2011, Defendant moved to dismiss the fraud count, pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to sever and stay Plaintiffs' fraud claim for a separate trial, pursuant to Fed. R. Civ. P. 42(b).  (Dkt. No. 77).[2]  Defendant argues that the Second Amended Complaint fails to plead fraudulent intent and detrimental reliance with sufficient particularity or, in the alternative, that Plaintiffs' fraud count should be severed and adjudicated with the bad faith claim separately from the contract claim. *Id*.[3]  On June 6, 2011, Plaintiffs filed their response, citing forty-three averments in the Complaint that they argue sufficiently plead the elements of fraud.  (Dkt. No. 84).

**II. DISCUSSION**

    **A.  Applicable Legal Principles**

        **1.  Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). To withstand a Rule 12(b)(6) motion to dismiss,

---

[1] Plaintiffs had previously amended their Complaint on April 8, 2010. (Dkt. No. 4).

[2] On June 18, 2010, the Magistrate Judge had granted Defendant's Motion to Stay and Abate Plaintiffs' bad faith claim, thus severing that claim for adjudication, if necessary, in a separate trial. (Dkt. No. 15).

[3] Defendant argues that fraud and bad faith are similar claims, and that the fraud allegation is likely to prejudice the jury's consideration of the breach of contract claim.

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 29 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim possesses such plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Gelman v. State Farm Mut. Auto. Ins. Co*., 583 F.3d 187, 190 (3d Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.[4]

In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, and matters of public record. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).[5] In addition to the complaint and any exhibits attached thereto, courts may also consider "an undisputedly authentic document . . . if the plaintiff's claims are based on the document," such as an insurance policy. *See Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Am. Corporate Soc'y v. Valley Forge Ins. Co.,* 424 F. App'x 86, 88-89 (3d Cir. 2011).

---

[4] In reviewing Defendant's Motion to Dismiss, the Court has carefully examined the 151 averments of Plaintiffs' Second Amended Complaint and eliminated those allegations that assert purely "legal conclusions" resting on the "factual allegations." *Iqbal*, 129 S. Ct. at 1952. After removing those legal conclusions, the Court has considered the remaining factual averments to determine if they are sufficient to render Plaintiffs' fraud claim plausible. *Id.*; *see also Twombly*, 550 U.S. at 569 (because fraud is understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires).

[5] *See also Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp*., 955 F. Supp. 441, 449 (D.V.I. 1997) ("On a motion to dismiss a court may properly look beyond a complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment . . .").

### 2. Fraud

To sufficiently plead fraud, a plaintiff must demonstrate, "(1) a false representation, (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive," and (5) detrimental reliance, or "action taken in reliance upon the representation." *Fin. Trust Co., Inc. v. Citibank, N.A.,* 351 F. Supp. 2d 329, 332 (D.V.I. 2004); *Shillingford v. Hess Oil of the V.I.*, 2009 U.S. Dist. LEXIS 53371, at *28-29 (D.V.I. June 18, 2009). A fraudulent inducement claim has essentially the same elements as common law fraud. *Beachside Assocs., LLC v. Okemo Ltd. Liab. Co.*, 50 V.I. 1042, 1047 (D.V.I. 2008) (citing *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 568-69 (D.V.I. 2004)).

Federal Rule of Civil Procedure 9(b) sets heightened pleading standards for allegations of fraud, requiring the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also ETC, Int'l, Inc. v. Curriculum Advantage, Inc.*, 272 F. App'x 139, 140 (3d Cir. 2008).[6] As such, to properly plead fraud, a party must allege facts "which will enable the court to draw an inference of fraud." *N. Am. Commc'ns, Inc. v. InfoPrint Solutions Co., LLC,* 2011 U.S. Dist. LEXIS 118345, at *11 (W.D. Pa. Aug. 3, 2011). Allegations in the form of conclusions or impermissible speculation as to the existence of fraud are insufficient. *Alvarez v. Ins. Co. of N. Am.,* 313 F. App'x 465, 467-68 (3d Cir. 2008).

Notwithstanding the heightened pleading standard applicable to fraud, the Third Circuit has also recognized that courts should apply Rule 9(b) with some flexibility. *Rolo v. City Investing Co.*

---

[6] *In Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), the Third Circuit noted that the purpose of Rule 9 is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 791. The method by which this purpose may be fulfilled is not prescribed—rather, the complaint may accomplish sufficient particularity in a variety of ways. *See id.*; *see also Twombly*, 550 U.S. at 569.

*Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998) (holding that fraud's pleading standards should not require plaintiffs to plead issues that may have been concealed by the defendants). The "requirements of Rule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with precise allegations of date, time or place or by using some means of injecting precision and some means of substantiation into their allegations of fraud." *Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002) (internal citations omitted). Although the elements of fraud must be pled with particularity, intent may be alleged generally. *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983); *see also N. Am. Commc'ns, Inc.,* 2011 U.S. Dist. LEXIS 118345, at *11-12 (citing Fed. R. Civ. P. 9(b)).[7]

### B. Analysis

Defendant seeks to dismiss, or alternatively, to sever Plaintiffs' fraud claim.[8] Defendant's dismissal argument is two-fold. First, Defendant argues that Plaintiffs failed to properly allege intent to deceive. Second, Defendant contends that Plaintiffs did not sufficiently plead detrimental reliance. In response, Plaintiffs cite to forty-three averments of fact in the Second Amended Complaint in support of their contention that they sufficiently pled fraud. After carefully considering all of the averments in the Second Amended Complaint, the Court finds that Plaintiffs' fraud allegations are insufficient to withstand a Rule 12(b)(6) motion to dismiss.

Throughout the Second Amended Complaint, Plaintiffs make several allegations that Defendant misrepresented and omitted facts in an attempt to avoid paying the full value of the

---

[7] *China Resource Products (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 856 F. Supp. 856, 863 (D. Del. 1994) ("Since actual fraudulent intent is rarely susceptible to direct proof, it is normally proven by circumstantial evidence.").

[8] In view of the Court's decision on Defendant's Motion to Dismiss, the Court need not reach Defendant's alternative argument.

insurance claim.[9]  Some of these allegations are included among the ones to which Plaintiffs point in asserting that they have sufficiently pled the elements of fraud. However, these allegations appear to fall more generally within the ambit of Plaintiffs' breach of contract and bad faith claims.[10]

In any event, even if those allegations are considered in conjunction with other averments, including those that Plaintiffs specifically characterize as "fraud," Plaintiffs' argument that fraud has been adequately pled is unpersuasive because the allegations lack the particularity called for under Rule 9(b) to allege both intent to deceive *and* detrimental reliance.  Thus, the fraud

---

[9] For example, Plaintiffs allege that Defendant lied when: Defendant represented that Plaintiffs had been paid for the loss through its flood insurance, when it had not (Dkt. No. 75 at ¶ 56); Defendant falsely claimed that the Plaintiffs' claims were "substantially inflated" (*Id*.); Defendant falsely claimed that the delay in paying Plaintiffs an advance resulted from Plaintiffs' adjuster "attempting to maximize [Plaintiffs'] claims" (*Id*. at ¶ 61);  Defendant falsely represented that a surveyor (hired to assess the damage to Plaintiffs' facility) was independent, although Defendant knew he was not independent (*Id*. at ¶ 81); Defendant's agent, First Insurance, falsely represented that Plaintiffs' cash flow problems caused Plaintiffs to fail to mitigate damages (*Id*. at ¶ 108); Defendant falsely represented to the V.I. Division of Insurance that it had not received a report from an independent adjuster (*Id*. at ¶ 117); Defendant falsely represented to the V.I. Division of Insurance that there were ongoing negotiations with Plaintiffs to resolve the claim, when there were not (*Id*.); Defendant "attempted" to falsely claim that there were no disputed issues and the property claim had been settled in full (*Id*. at ¶ 120); and Defendant falsely represented the estimated amount of Plaintiffs' business interruption claim. (*Id*. at ¶ 128).

[10]  To make out a cause of action for the tort of bad faith in the Virgin Islands, a plaintiff is required to show: 1) the existence of an insurance contract between the parties and a breach by the insurer; 2) intentional refusal to pay the claim; 3) the nonexistence of any reasonably legitimate or arguable reason for the refusal (debatable reason) either in law or fact; 4) the insurer's knowledge of the absence of such a debatable reason[;] or 5) when the plaintiff argues that the intentional failure results from the failure of the insurer to determine the existence of an arguable basis, the plaintiff must prove the insurer's intentional failure to determine the existence of such a debatable reason.

*Justin v. Guardian Ins. Co.,* 670 F. Supp. 614, 617 (D.V.I. 1987).

allegations in the Second Amended Complaint fall short of meeting the standard necessary to withstand a Rule 12(b)(6) motion to dismiss.

This conclusion is confirmed by a review of Count IV of Plaintiffs' Second Amended Complaint, which is entitled "fraud" and alleges:

> 150. Defendant committed fraud against Plaintiff. Defendant promised advances it had no intention of providing, represented that experts it actually hired and controlled were 'independent' when they were not, withheld documents while representing Plaintiff had received all documents, fabricated a false claim of co-insurance when there was no co-insurance issue, made knowingly false representations to the V.I. Division of Insurance.
>
> 151. As a result, Plaintiff was not paid the funds due under the policy of insurance, made compromises on claims issues it would not have made but for the fraud, delayed Plaintiff's hurricane repairs such that additional property damage has incurred for which Plaintiff will have to expend funds to repair, increased Plaintiff's loss of income which has caused Plaintiff economic losses associated therewith, caused Plaintiff loss of investment on the funds wrongfully withheld, caused Plaintiff attorney fees, accountant fees and expert fees and other compensatory damages.

(Dkt. No. 75). Two allegations within Count IV merit particular attention and are illustrative of the problems that plague Plaintiffs' fraud claim.

First, Plaintiffs state that Defendant committed fraud when it promised them an advance payment on the insurance claim, because the Defendant never intended to provide such an advance. *See id*. at ¶ 150. In support thereof, the Second Amended Complaint alleges that: "On January 15, 2009, Defendant notified its agent[,] First Insurance that it was unlikely that Defendant would agree to pay the advance represented to Plaintiff[s] would be paid." *Id*. at ¶ 55. Plaintiffs further allege that, contrary to Defendant's communication with its agent, "Defendant represented to Plaintiff[s] that [they] would receive a $350,000.00 advance payment." *Id*. at ¶ 43. The Second Amended Complaint also alleges that "Defendant finally agreed to pay Plaintiff[s] an advance on account of

$300,000.00. Despite that agreement, funds were not transferred to Defendant's agent." *Id*. at ¶ 20. These averments sufficiently allege that Defendant intended to deceive Plaintiffs concerning the advance payment on the insurance claim. Where the advance payment allegation falls short, however, is in its failure to connect Defendant's alleged intent to deceive with Plaintiffs' corresponding action taken in reliance on Defendant's alleged deceit to Plaintiffs' detriment.

To establish detrimental reliance in a fraud context, a plaintiff must demonstrate that it acted upon a defendant's false representations "to [its] damage." *Geesey v. Stryker Corp.,* 2010 U.S. Dist. LEXIS 78677, at *14 (E.D. Pa. Aug. 3, 2010). More specifically, the plaintiff is required to show that the representation "played a substantial part, and therefore was a substantial factor, in influencing its decision." *Alvarez,* 313 F. App'x at 469.

With regard to the advance payment allegation, the Second Amended Complaint does not allege facts from which a reasonable inference can be drawn that Plaintiffs acted in reliance on Defendant's alleged misrepresentations. Plaintiffs do not specifically aver that Defendant's statements, conduct or concealments concerning advance payments somehow "played a substantial part in influencing" Plaintiffs' actions or decisions. *See Alvarez*, 313 F. App'x at 465, 469. Nor have Plaintiffs otherwise pled, with specificity, allegations from which one can draw the inference that, "but for" Defendant's alleged misrepresentations concerning the advances, Plaintiffs would not have acted in a particular manner to their detriment. *Compare Stouts-Brunswick Assocs. Ltd. P'ship v. Bankers Trust Co.*, 173 F. App'x 109, 112-13 (3d Cir. 2006) (affirming dismissal of fraud count where plaintiff failed to demonstrate reliance on defendant's misrepresentations) *with Fin. Trust Co. v. Citibank, N.A.*, 351 F. Supp. 2d 329, 333 (D.V.I. 2004) (motion to dismiss fraud count denied where Plaintiffs alleged that, "but for" defendants' misleading statements and omissions, "plaintiff would not have proceeded with their loan and investment programs and would not have

9

suffered [ ] damages.").[11]  In sum, Plaintiffs' Second Amended Complaint does not plead with particularity how, when, where or why they made decisions or took actions to their detriment, in reliance upon Defendant's alleged misrepresentations concerning monetary advances on their claim. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1422 (3d Cir. 1997) (Although Rule 9(b) does not require a recitation of "every material detail" of the alleged fraud, it does require that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany "the first paragraph of any newspaper story"—that is, the "who, what, when, where and how" of the events at issue.); *see N. Am. Commc'ns, Inc.*, 2011 U.S. Dist. LEXIS 118345, at *11 (to satisfy Rule 9(b), a plaintiff must allege that damage resulted when it acted or relied upon defendant's misrepresentations).

Conversely, in a separate averment, the Second Amended Complaint sufficiently alleges detrimental reliance concerning certain compromises that Plaintiffs made. However, Plaintiffs fail to plead that the Defendant's alleged intentional deceit led to those compromises. Specifically, Plaintiffs' fraud count at paragraph 151 alleges that, "Plaintiff . . . made *compromises on claims*

---

[11] Similarly, in paragraph 9 of the Second Amended Complaint, Plaintiffs allege that the "Defendant recommended and represented to Plaintiff that $183,000.00 in business interruption insurance was the *correct amount*." (Dkt. No. 75) (emphasis added).  The Second Amended Complaint at paragraph 53 subsequently alleges that Defendant later falsely claimed that Plaintiffs had underinsured for business interruption, and as a result, would be subject to a co-insurance penalty. *Id*. However, there are no allegations regarding whether Defendant's alleged representation led Plaintiffs to underinsure for business interruption or take any other action to their detriment, including action that in fact resulted in the assessment of a co-insurance penalty. *Id*.

In addition, although Plaintiffs allege several misrepresentations, it is unclear *how* such misrepresentations are material to Plaintiffs' theory of recovery for fraud.  For example, Plaintiffs allege that "Defendant falsely failed to acknowledge it had the proof of loss for (8) eight days and falsely claimed [its] failure to timely pay the funds were a result of Plaintiff's failure to provide the same." Second Amended Complaint, (Dkt. No. 75 at ¶ 62).  Plaintiffs also assert that "Defendant's adjuster further falsely represented that Plaintiff[s] [were] attempting to include flood damage in [their] claim." *Id*. at ¶ 71. However Plaintiffs do not provide any connection between these averments and their fraud theory.

issues it would not have made *but for* the fraud." Second Amended Complaint, (Dkt. No. 75 at ¶151) (emphasis added). In this context, and applying Rule 9 with some flexibility, the Second Amended Complaint sufficiently alleges detrimental reliance, because Plaintiffs aver that "but for" the Defendant's conduct, Plaintiffs would not have "made compromises." *Id*. However, the Court is left to speculate as to which of Defendant's allegedly fraudulent actions are tied to Plaintiffs' compromises. *See Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1186 (3d Cir. 1993) ("mere proof of nonperformance" is insufficient evidence, as a matter of law, to demonstrate a party's fraudulent intent).[12]

Put plainly, Plaintiffs' fraud claim, as pled, requires the reader to engage in rampant speculation to fashion a patchwork of averments in an attempt to stitch together allegations of the Defendant's intentional misrepresentations with allegations of Plaintiffs' corresponding detrimental reliance. The four corners of the Second Amended Complaint fail to link *how* Plaintiffs' alleged compromises were related to any specific alleged misrepresentations; *what* alleged misrepresentations, in particular, the Plaintiffs detrimentally relied upon; or *what* specific compromises were made. In sum, the Plaintiffs' fraud allegation concerning the "compromises"

---

[12] Similarly, in paragraph 97 of the Complaint, the Plaintiffs allege that "Plaintiff only agreed to the $890,000.00 of undisputed losses as money Plaintiff actually claimed were of a higher cost based upon Defendant's representations that the funds would be received expeditiously so Plaintiff could survive economically." (Dkt. No. 75 at ¶ 97). Yet, there are no supporting allegations to suggest that Defendant's representations were made with the intent to deceive the Plaintiffs. *See, e.g., Blenheim Group, LLC v. JT USA, LLC*, 2011 U.S. Dist. LEXIS 82076, at *7 (D.N.J July 26, 2011) (although fraudulent intent may be alleged generally, "[t]here must still be sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."). Nor does the Complaint make plain whether the $890,000.00 agreement identified in paragraph 97 was the "compromise" alleged in their fraud count at paragraph 151.

they made, lacks a clear "cause and effect" nexus from which this Court may draw the reasonable factual inferences necessary to satisfy Rule 9(b).[13]

Precision is the hallmark of a particularized fraud allegation. *Foodtown, Inc*., 296 F.3d at 173 n.10 (internal citations omitted) ("[R]ule 9(b) may be satisfied . . . by using some means of injecting precision and some measure of substantiation into [the Plaintiffs'] allegations of fraud."). Even applying Rule 9 with flexibility and drawing inferences in Plaintiffs' favor, the Plaintiffs' allegations lack the necessary precision to allege the elements of a fraud claim with particularity. As such, Plaintiffs' fraud count, as pled in the Second Amended Complaint, cannot survive Defendant's Rule 12(b)(6) challenge.

### III. CONCLUSION

Governing Supreme Court precedent requires a careful analysis of factual allegations to determine if they are sufficient to render the claims plausible. A fraud claim is further subject to the heightened pleading standard expressed in Rule 9(b) of the Federal Rules of Civil Procedure, which requires allegations that "state with particularity the circumstances constituting fraud." Because Plaintiffs have failed to plead fraud with the necessary particularity, Defendant's Motion to Dismiss Count IV of the Second Amended Complaint is granted, and the fraud count shall be dismissed without prejudice. An appropriate Order accompanies this Memorandum Opinion.

Date: March 21, 2012 _____/s/_____
                                                         WILMA A. LEWIS
                                                         District Judge

---

[13] This problem plagues all of the allegations in averments 150 and 151 of the Second Amended Complaint.